WANNEBO *v.* STONE.

1. SALES—PRINCIPAL AND AGENT—CONTRACTS—LOGS AND LOGGING.
    Where the owner of certain lands agreed with a contractor
    to finance the cutting and marketing of the timber and
    the contractor agreed, for a compensation stated, to carry
    on the operations and to cause the lumber to be scaled
    and graded on the docks at Grand Marais, Minn., the
    contract providing that title should remain in the pro-
    prietor and the contractor should have a lien on the
    product to secure his advances, and that he should assist
    the owner to find a purchaser, but no sale should be made
    without the consent of the owner, a sale made by the con-
    tractor at a price to which the owner of the lumber made
    no objection, the transaction, being later confirmed in
    correspondence with the purchaser of such lumber, was
    sufficient to pass title.

2. SAME—TROVER AND CONVERSION—AGENCY.
    Plaintiff's letter advising the purchaser that the con-
    tractor had no title to the lumber, that all his right was
    simply a lien and stating "that the full value of the lum-
    ber must be accounted for and paid to me, and not to
    Mr. Mayhew (the contractor)," amounted to an affirm-
    ance of the sale, in the absence of any showing that plain-
    tiff objected to the price at which the lumber was sold or
    that it was too low or was unsatisfactory, and defeated
    any right of the owner to bring an action of trover against
    the buyer.

Error to Wayne; Hally, J. Submitted April 17,
1914. (Docket No. 65.) Decided July 24, 1914.

Trover by Hans Wannebo against Fred J. Stone for
the conversion of certain lumber. Judgment for de-
fendant on a directed verdict. Plaintiff brings error.
Affirmed.

*Davis & Bromley,* for appellant.
*Fred H. Aldrich,* for appellee.

This is an action of trover brought by the plaintiff
against the defendant to recover the value of a ship-

load of lumber, about 517,000 feet, taken by defendant from piles on the dock at Grand Marais, Minn., on or about November 15, 1911. The claim of plaintiff is stated as follows:

"It was the claim of the plaintiff, Hans Wannebo, that on or about November 15, 1911, he was the owner of about 517,000 feet of pine lumber piled upon the dock at the village of Grand Marais, Minn., and that one George Mayhew, under an agreement in writing with the plaintiff, dated May 31, 1911, had cut and hauled the timber for said lumber to the sawmill, and had caused the same to be sawed into lumber, and had caused the same to be hauled and piled on the dock at Grand Marais, Minn., and that for the expense thereof, with certain other interests therein, was to have had a lien thereon, and that in the sale of said lumber the said Mayhew should assist the said plaintiff in finding a purchaser or purchasers at the highest prices for which the same could be sold, but no sale should be made, except with the consent and approval of the said plaintiff, Hans Wannebo; and it is the further claim of the plaintiff that on or about November 15, 1911, the said George Mayhew, without the consent and approval of the said plaintiff, Hans Wannebo, sold all of said lumber to the said defendant, Fred J. Stone, who took possession thereof and converted it to his own use, and the plaintiff having proven such facts as claimed by him, by a fair preponderance of the evidence in the case, then he was entitled to recover a verdict in this case for the value of his interest in the lumber at the time of such conversion by the said defendant, Stone."

The contract, in terms, is as follows:

"This agreement, made and entered into this 31st day of May, 1911, by and between George H. Mayhew, of Grand Marais, Minnesota, and Hans Wannebo, of Duluth, Minnesota.

"Witnesseth, whereas, said Wannebo is the owner of the southeast quarter of the southeast quarter of section 20, the south half of the southwest quarter of section 21, and the north half of the northwest quarter of section 28, in township 62 north, of range 1 east, of the 4th P. M., upon which is considerable timber

which he desires cut and made into lumber and then sold, but is without financial ability to carry on said transaction; and whereas, said Mayhew desires, to finance said operations and cause the same to be carried on at the mutual profit of both of said parties:

"Now, therefore, this witnesseth, that said Mayhew agrees to immediately commence and to continue in a proper, workmanlike, and business way to the completion thereof and cause all the standing and down pine and spruce timber on said land which will make a log six inches or more at the top, and suitable for lumber, to be cut into appropriate lengths and drayed or wagon-hauled to the portable saw-mill herein stated; to cause to be immediately erected at some suitable place on said land a portable sawmill with a daily capacity of about 12,000 feet, and there cause said mill to be continuously operated in a business and workmanlike manner, and said logs to be sawed into merchantable lumber, and of dimensions which may be most profitable, and thereupon to cross-pile the same and there keep it until weather conditions shall permit of its being hauled on wagons during the present season to Grand Marais; that thereupon he will wagon-haul all of said lumber, except that which grades either numbers 4 or 5, but including all of said spruce lumber, to the dock at Grand Marais, Minnesota, and there properly grade, correctly scale, and stock-pile the same; to furnish said Wannebo correct duplicates of said scale at different times as said lumber is so scaled; to employ one * * * or some other competent person agreeable to said Wannebo, whose duty it shall be to supervise and direct said sawing, so that the same shall make merchantable lumber of the greatest market value, and whose duty it shall also be to properly grade, assort, and scale the same; to make prompt and punctual payment for all bills and claims which may be incurred on account of said entire work, so that no lien shall accrue against any of said lumber, and to indemnify and save said Wannebo harmless from all costs and liability which may arise by reason of any of said work herein contemplated; to finance said entire operation, that is to say, that he will promptly furnish and provide all moneys necessary to promptly and efficiently carry on the same to a sale of said products,

and that as security for said money so paid or advanced by him he will receive from said Wannebo (who agrees to give the same) a good and sufficient first mortgage lien upon the aforesaid timber, and that as soon as said Mayhew shall have been repaid such amount he will then cause said mortgage to be satisfied of record.

"It is further agreed that the title to said lumber shall be and remain in said Wannebo until the same is actually sold, except that said Mayhew shall have an additional lien upon the same to secure him for his said advances, and that in the sale of said lumber said Mayhew shall assist said Wannebo in finding a purchaser or purchasers at the highest and best prices for which the same can be sold, but no sale shall be made, except with the consent and approval of said Wannebo.

"As to all of said lumber which under this contract is not to be delivered on docks at Grand Marais, the same is to be disposed of in accordance with the mutual agreement which may hereafter be made by and between the parties hereto and at the best price obtainable.

"Upon the sale of said lumber, both that upon the dock at Grand Marais as well as the remaining parts, it is agreed that the proceeds thereof shall be divided between the parties hereto in manner as follows, which division said Mayhew agrees to receive, and the said Wannebo to allow him in full compensation and payment for all his work and expenses hereunder, to wit:

"(a) As to all of said lumber sold upon the dock at Grand Marais:

"(1) At the rate of $4 per thousand feet log scale for cutting and hauling said lumber to said mill.

"(2) At the rate of $5.50 per thousand feet board measure for said sawing, grading, and piling at said mill.

"(3) The actual cost per thousand feet board measure for hauling said lumber to Grand Marais to be the actual cost thereof.

"(4) At the actual cost per thousand feet board measure for said dockage and said piling at Grand Marais, not, however, exceeding 50c per thousand feet for said dockage, and 50c per thousand feet for said piling, and not to exceed 50c per thousand feet board

measure for any additional unforeseen extra expense incurred by said Mayhew in connection with the piling and the maintenance of said lumber in piles at said dock.

"(5) In addition to the foregoing, said Mayhew shall have the additional sum of $1 per thousand feet board measure as to such of said lumber as shall be sold at $20 or less per thousand feet, and said Wannebo shall have the entire difference between the aggregate of the foregoing and the sum for which said lumber shall sell; but, as to all of said lumber which shall sell for more than $20 per thousand feet board measure, said Mayhew shall have one-half of the excess above $20 per thousand feet for which the same may be sold, and said Wannebo the remainder.

"(b) As to all other lumber so sawed except said spruce, said Wannebo agrees to allow to and said Mayhew agrees to receive in full satisfaction for all his work and expenses, at the rate of $4 per thousand feet log scale for cutting and hauling the same to said mill, at the rate of $5.50 per thousand feet board measure for sawing, grading, and piling the same at said mill, and from any sum for which said lumber may sell in excess of the total of said two items, the one-half thereof shall be paid to said Mayhew, and the other half to said Wannebo.

"(c) As to all of said spruce timber so sawed, said Wannebo agrees to allow to and the said Mayhew agrees to receive in full satisfaction for all his work and expenses, at the rate of $4 per thousand feet log scale for cutting and hauling said lumber to said mill, at the rate of $5.50 per thousand feet board measure for said sawing, grading, and piling at said mill, the actual cost per thousand feet board measure for hauling said lumber to Grand Marais, not, however, exceeding $4 per thousand feet, and the actual and necessary expenses in handling or caring for said lumber at Grand Marais prior to a sale thereof, and in addition thereto one-half of the difference between said sums total and the full price for which the same may be sold, the said Wannebo to have and retain the difference.

"It is further agreed that the lumber when piled at Grand Marais shall be insured in some reputable insurance company, the premium for said insurance to

be paid by said Wannebo, but the policies made payable to the parties hereto as their interest may appear.

"In case the amount of money actually paid by said Mayhew in the performance of his part of this agreement shall exceed $6,000, then, as to such excess only, said Wannebo agrees to pay said Mayhew, in addition to the foregoing allowance to him, interest on such excess at the rate of 8% per annum, the interest to be computed from and during the time said Mayhew shall have such excess so invested, and until the receipt by him of the first moneys obtained from the sales results herein stated.

"It is further agreed that, in addition to the foregoing allowances, said Wannebo shall pay to said Mayhew the one-fourth of the salary or wages actually and necessarily paid to the person who may do the scaling and have the directions as herein stated."

The plaintiff received notice of the sale of the lumber by the following telegram:

"Received at the United Wireless Telegraph Station.

"DULUTH, MINN., Nov. 15th, 1911.
"From Grand Marais, Minn., to Hans Wannebo, 624 East 6th St., Duluth, Minn.
"Cancel insurance lumber shipped today be up next boat.      "G. H. MAYHEW."

The defendant settled for the lumber and gave his notes to Mayhew therefor on November 21st. On November 25th Mr. Mayhew visited the plaintiff at Duluth and informed him that Mr. Stone was the purchaser. On December 1st the plaintiff wrote the defendant the following letter:

"FRED J. STONE,
      "Detroit, Mich.
"I am informed that Mr. George H. Mayhew, of Grand Marais, has sold to you f. o. b. Steamer Ketchem, at Grand Marais, in November of this year, a lot of lumber of which I am the owner. Mr. Mayhew has no title thereto; all his right to it is simply a lien. This is to notify you that the full value of that lumber must be accounted for and paid to me, and not

Mr. Mayhew. I think it would be to your interest to see to it at once that this is done, otherwise I shall have to hold you personally responsible therefor. Kindly let me hear from you at once, and oblige.

"Yours very truly,
"HANS WANNEBO,
"No. 624 East 6th Street, Duluth, Minn."

At the close of plaintiff's proofs the defendant made a motion to direct a verdict, which was granted, and this ruling constitutes the error relied upon in this case.

KUHN, J. (*after stating the facts*). In reading the contract, there is some difficulty in determining what rights Mayhew was to have in selling the lumber. By its terms, Mayhew bound himself to assist Wannebo "in finding a purchaser or purchasers at the highest and best prices for which the same can be sold;" and the contract further provides, "but no sale shall be made, except with the consent and approval of said Wannebo." This latter clause is clearly subject to the construction that some other person than Wannebo could arrange for the sale, but that it should not be final and binding, without his consent and approval. It is the claim of Mayhew that he had the right under the contract to arrange for the sale; that by the terms of the contract he also had the right to have his lien discharged by the payment to himself of the first money received from the sale of the lumber. And it appears that under the most favorable construction of the testimony in the case for the plaintiff his (Mayhew's) lien would still exceed in value the amounts received by him from the sale of the lumber. It also appears that Wannebo does not object to the price at which the lumber was sold by Mayhew, but in his testimony places the value at $19 per thousand, the amount paid by Stone.

The learned trial judge was of the opinion that the letter of December 1st was a confirmation of the sale

by Mayhew, and that therefore there was no conversion, and the action of trover must fail. With this we are inclined to agree. A careful reading of this letter shows that it does not repudiate the sale. It does not say that Mayhew had no right to sell the lumber, but simply that he has no title thereto, and "all his right to it is simply a lien," and that therefore the full value of the lumber must be accounted for and paid to Wannebo, and not to Mayhew. As we believe that under the terms of the contract Mayhew had a right to arrange a sale, and as by the letter of December 1st Wannebo, in effect, gave his consent thereto, it cannot be said that there was a conversion of the property in question.

The circuit judge reached a proper conclusion, and the judgment is affirmed.

MCALVAY, C. J., and BROOKE, STONE, OSTRANDER, BIRD MOORE, and STEERE, JJ., concurred.